## WIRTALLA et al. v. HALL.

(District Court, D. New Jersey. September 6, 1916.)

No. 385.

1. PATENTS ⬤⟿328—VALIDITY AND INFRINGEMENT—LOOM HEDDLE-FRAME.
    The Wirtalla patent, No. 729,477, for a loom heddle-frame; in view of the prior art is void for lack of invention; also *held* not infringed, if conceded validity.

2. PATENTS ⬤⟿17—INVENTION—MECHANICAL SKILL.
    The dividing of a thing which in the prior art was whole into parts, or the making of a part removable which was previously irremovable, does not constitute patentable invention.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 16, 17; Dec. Dig. ⬤⟿17.]

In Equity. Suit by Rudolph G. Wirtalla and the Steel Heddle Manufacturing Company against Isaac A. Hall, individually and doing business as I. A. Hall & Co. On final hearing. Decree for defendant.

Russell M. Everett, of Newark, N. J., for complainants.

John W. Steward, of Paterson, N. J., for defendant.

ORR, District Judge. This is an ordinary patent suit, wherein the testimony was taken otherwise than in open court. The plaintiff Wirtalla, who is a citizen of New Jersey, is the patentee and owner of letters patent of the United States, No. 729,477, issued to him May 26, 1903, for a loom heddle-frame. The plaintiff corporation, which is a citizen of the state of Pennsylvania, is a sole and exclusive licensee under said patent to manufacture and sell the subject thereof. The defendant is a citizen of New Jersey, engaged in manufacturing and dealing in general silk mill supplies.

The bill charges the defendant with infringing the rights of the

plaintiffs by the manufacture and sale of heddle-frames which embody the important features of the heddle-frame described in the patent in suit. The answer avers that the patent is invalid for want of invention in view of the prior art, and further that, even if it were a valid patent, the heddle-frames manufactured and dealt in by the defendant do not infringe any of plaintiff's rights.

A loom heddle-frame is a necessary part of machinery for use in weaving. So far as appears in this case, it is a light, rectangular frame having within it, and near the top and bottom, horizontally disposed bars, called heddle-bars, which support or carry vertically disposed heddles, each of which is intended to receive a warped thread through its eye, which is midway between its ends. The heddles are, in ordinary practice, of metal, and have longitudinal slots in their ends, by means of which they are strung upon the top and bottom heddle-bars. The heddle-bars are ordinary flat strips arranged edgewise, and have such dimensional relation to the slots of the heddles that the heddles are loose enough on the heddle-bars to permit them to slide or shift thereon. It is perhaps apparent, but at all events is made clear by the testimony, that the top and bottom heddle-bars, because of their length and otherwise small dimensions, should be supported between their ends to the heddle-frame, lest they be distorted by reason of the many heddles strung thereon, and by reason of the use of many heddle-frames in the same operation.

Before considering the means of supporting or staying the heddle-bars, it is proper to consider the use to which the heddle-frame is put. As has been noted, the heddles carry through their eyes the warped threads. There must be more than one heddle-frame in use for weaving. Heddle-frames with the warped threads through the heddles are so disposed that by suitable mechanism some of the heddle-frames are caused to move upward and others downward, thus forming the "shed" for the shuttle to pass through. There may be thousands of warped threads used in weaving. To prevent distortion of the heddle-bars, stay-hooks have been used for many years to hold the heddle-bars in more or less firm position in relation to the top and bottom parts of the heddle-frame.

[1] The patentee, in his specification, states his object to be as follows:

"My invention relates to improvements in loom heddle-frames of that class wherein a series of heddles are strung on heddle-bars, the latter being stayed in place by hooks attached to the end portions of the frame. Heretofore considerable difficulty has been experienced by operators in adjusting the heddles within the frame and in applying or removing the heddles. This is due, primarily, to the attachment of the stay-hooks to the frame in a substantially permanent way, and this makes it necessary for the operator to forcibly lift the heddle-bars over the hooks, which practice is objectionable for two reasons: First, the heddles are strained or stretched lengthwise to such an extent that they are frequently broken or made useless; and, secondly, the application of force by the hands hurts them to such an extent that operators object to changing the heddles.

"The object that I have in view is to provide means by which the adjustment, removal, and insertion of the heddles can be easily, quickly, and readily performed without hurting the hands of the operator, because it is not necessary to forcibly lift the heddle-bars and strain the heddles strung thereon. I

attain these objects by the employment of a stay-hook, which is removably attached to the heddle-frame and is easily slipped from engagement with the heddle-bars."

It is perhaps not necessary to refer at greater length to the specifications. What the patentee appears to have done has been to insert two rods through the vertical sides of the frame, and within the frame and parallel and near to the upper and lower parts of the frame respectively. These rods are bolted at their ends upon the outside of the frame, and may be removed and replaced as desired. The rods pass through the eyes of stay-hooks, which hooks tend to hold in place the heddle-bars. As many stay-hooks may be used upon the rod as is deemed proper. The rod itself is intended to be held in fixed relation to the portion of the frame with which it is parallel and more closely placed. It is braced by the employment of eyes on the frame, through which eyes it extends, as well as through the eyes of the stay-hooks. The patent, however, is not limited to the use of rods extending clear through the frame, but, as appears in Fig. 3, contemplates rods of shorter length held by eyes on the frame to which the stay-hooks are attached. The claims of the patent in suit are as follows:

"1. A loom heddle-frame having heddle-supporting bars, a rod or bolt fastened removably to said frame, and a stay-hook fitted to said rod or bolt and the heddle-supporting bar, whereby the rod or bolt may be withdrawn from the frame and the hook may be slipped from engagement with the heddle-supporting bar.

"2. A loom heddle-frame having heddle-supporting bars, a series of stay-hooks engaging with said bars, and a rod or bolt secured removably to the frame, said stay-hooks being threaded on the rod or bolt and adapted on the withdrawal of said rod to be easily disengaged from the heddle-supporting bar.

"3. A loom heddle-frame having heddle-supporting bars, a removable rod or bolt attached to said frame, and a stay-hook loosely and slidably fitted on said rod or bolt and engaging removably with the heddle-supporting bar.

"4. A loom heddle-frame having a heddle-supporting bar, a rod or bolt secured removably to the frame, an eye fastened to the frame and engaging said rod or bolt, and stay-hooks threaded on the rod or bolt and engaging the heddle-supporting bar."

In view of the evidence offered by the defendant as to the state of the prior art, this court has been unable to find invention in the apparatus of the patent in suit. The plaintiff Wirtalla was, at the date of his application for the patent in suit and for some years after, superintendent of the Astoria Silk Works on Long Island. His term of service there lasted some 17 years. In his testimony he states what led him to adopt the form of heddle-frame disclosed in the patent as follows:

"Q. 6. What led to the making of the invention covered by your patent No. 729,477? A. When the flat steel heddle first was put on the market, the frames used for them were of the old style, and caused much trouble to the operator in handling them.

"Q. 7. What was this trouble? A. The frames used at that time consisted of two wooden rails, two wooden end pieces, and two heddle-bars on which the heddles were strung. These heddle-bars were supported by stay-hooks which were fastened into the wooden rails. In order to put the heddle-bars into the frame for operation, they had to be lifted over those stationary hooks, which the operators objected to, as it hurt their hands. Those operators, who had

most to do with filling the frames with heddles and heddle-bars, were on the point of rejecting the steel heddles, which were satisfactory in every way. I told those persons who complained to me about this that I would do my best to get up a frame which would do away with the lifting of the heddle-bars over the stay-hooks, as we were all in favor of the flat steel heddle; they lasted for years, where the thread heddles which we formerly used would not last in some cases for a month. In order to continue to use the flat steel heddle, I was forced to get up a frame which was satisfactory and could be used without annoyance to the operator. I worked on this frame for some time, and the outcome was the frame which I had patented in the patent in suit."

This court is satisfied that the heddle-frame of the patent was just such a frame as any other man in Wirtalla's position would perhaps have adopted to have obtained the object he was after. What the patentee did was substantially to make the top of the heddle-frame and the bottom of the heddle-frame each in two parts, one of which was a rod of metal and was removable. To the removable part of the top and of the bottom of the frame he engaged the stay-hooks, which themselves could be removed from the removable part of the frame. By so doing he overcame an objection which his employés had made to the frames theretofore used by them, which objection was founded upon the fact that the stay-hooks were attached to the frame in a substantial permanent way. Whether he had knowledge of the prior art as disclosed in prior patents is immaterial, yet his long service to the Astoria Silk Works would reasonably lead to a presumption that he was well acquainted with the art of weaving and with the various utilities employed in that art.

[2] It is impossible to find invention in a case like the present, where a patentee divides that which is whole into parts, or where a patentee makes a part removable which is intended by his predecessors in the art to be irremovable. An experienced mind has under consideration many ways by which that which is removable may be held as firmly in place as though it were irremovable. The language of Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192–205, 2 Sup. Ct. 225, 27 L. Ed. 438, appears to be more and more pertinent because of the multiplicity of patents issued yearly by the United States. It is well that it be often quoted, that it may be more constantly in mind, and act as a corrective of abuses to which the public may be subjected. He said:

"The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill, is distinctly shown, is unjust in principle and injurious in its consequences. The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers, who make it their busi-

ness to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

In United States patent No. 36,166, issued to H. Parsons under date of August 12, 1862, for "improvement in harness for looms," this statement is made:

"The heddle-bars may be stiffened or braced centrally by hooks or supports *i i*, or in any desirable manner."

In the reissued United States patent No. 9,220, to D. C. Brown, issued May 25, 1880, for "harness for looms," there is the disclosure of rod hooks adjustably attached to the top and bottom of the heddle-frame, and which also brace the heddle-bar. The United States patent to Fehr, No. 673,499, discloses stay-hooks which support the heddle-bars, yet which are attached to and slide upon the horizontal part of staple-like brackets extending from the frame, the horizontal portion of which bracket is between the heddle bar and the top or bottom of the frames in the same relative position that the rod or bolt of the patent in suit occupies. The United States patent No. 253,335, issued February 7, 1882, to J. Ashworth, for a heddle-frame, was sufficient of itself to suggest to Wirtalla the apparatus of the patent in suit. In the specifications of the Ashworth patent there is this statement:

"The invention consists in the combination, with the heddle-frame having slotted side bars, the heddles, and the ordinary bars upon which the heddles are strung, of additional outer bars or rods and links and hooks or eyes for uniting the said bars and connecting them with the frame, whereby the ordinary inner bars upon which the heddles are strung are prevented from bending and twisting and the heddles are rendered easily changeable, as will be hereinafter fully described."

The rod or bolt of the Wirtalla patent is the outer bar or rod of the Ashworth patent. It passes through suspending hooks or eyes rigidly attached to the frame and through suspending slides or links, through which also passes the proper heddle bar. The suspending slides or links of the Ashworth patent are the equivalent of the stay hooks of the Wirtalla patent. The bars or rods *E* of the Ashworth patent are removable, and are secured removably to the frame, and the stay-hooks are threaded thereon.

Without further comment on the prior art, it is sufficient to find that there was disclosed therein every element of each of the claims of the patent in suit. It is well to note, also, that there is no evidence in the case that the Wirtalla heddle-frame leaped at once into general use, thus creating a presumption of novelty. Steel heddles had not been long in use. Therefore to use them with the existing apparatus of the art, some change therein was reasonably necessary. As appears by the catalogue of the plaintiff corporation, issued in the year 1908, and from other evidence, heddle-frames other than those like Wirtalla's are sold and used.

It is urged, however, that the utility of the patented frame is an important factor in determining its patentability. The defendant cannot

deny the utility of the patent, because for at least a year, and perhaps longer, he manufactured Wirtalla's heddle-frame under a license. Such relationship to the patentees does not estop him from denying the validity of the patent for want of invention. The interest of the public must be protected.

As there was no invention by Wirtalla, little need be said with respect to infringement. If the Wirtalla patent could be deemed valid, its scope would necessarily be limited to the exact device or arrangement therein shown. The apparatus of the defendant differs from that of the patent in this: That the rod or bolt does not extend through the sides of the frame or into the sides of the frame. It is held to the top or bottom of the frame, as the case may be, by eyes on the frame, it is true, and as well passes through the eyes of the stay-hooks, but it has no nuts at either end. Being within the plane of the frame, and not extending through the sides thereof, it cannot be removed from the frame without a slight distortion for the purpose of moving one end out of the plane of the frame before removing the same from the eyes of the frame or the eyes of the stay hooks. Furthermore, the evidence satisfies the court that, while it may be removed as last above indicated, yet in practice it is not ordinarily removed when it is desired to remove the heddle-bars and heddles from the frame. There is sufficient play in the heddle-frame of the defendant to permit the operator to raise the heddle-bars over the stay-hooks and thus release them from the frame.

The bill must be dismissed, at the cost of the plaintiffs. Let a decree be presented.